By the Court—Bosworth, Ch. J.
The assignment to the defendant was made on the 18th of July, 1861. This suit is brought to recover a quarter’s rent, falling due August 1st, 1861. The inventory and schedules required by the statute of April 13,1860, (Laws of 1860, p. 594,) were completed, executed and filed.
The defendant was not in said store (the demised premises) “ after the execution of the said assignment, and did not use, occupy or interfere with the use or occupation thereof, or exercise control over the same.”
“ The defendant, as assignee, did not at any time'enter into possession of said premises.”
He did not, as such assignee, elect to become the assignee of said lease.
The lease is not mentioned in the assignment, nor in the schedules annexed to it.
. Assuming that an assignee of all the property of a debtor, may reject a lease owned by the debtor, where the lease is not, in terms assigned, and thus avoid personal liability for subsequently accruing rent, this is-a clear case of exemption from liability, unless two other facts found by the Referee have the effect to impose such liability. It *161 is found, that on the 15th of August, 1861, the defendant, as assignee, collected from B. J. Eyre & Co., $87.50, being a quarter’s rent, falling due August 1, 1861, for parts of the demised premises, occupied by them under a hiring from the assignors. On the same day, he collected from H. H. Taylor & Bro. the sum of $50, one quarter’s rent falling due August 1,1861, for other parts of the demised premises, occupied by them under a hiring from the assignors. It is also found that the defendant knew, when he received the $50, “ that said sum was for rent of part of said premises up to August 1,1861,” but such knowledge as to the $87.50 is not found.
The schedules annexed to the assignment, state that “H. H. Taylor & Bro.” and “B. J. Eyre & Co.” are debtors of the assignors, on “ Open ac.,” the former for $50, and the latter for $87rtro-
It is also found, that the defendant did not know, until the commencement of this action, of the existence of the lease from the plaintiff to his assignors, or what the rent of the store was, but knew that the assignors “ had occupied said store for several years and he had heard various accounts (quere amounts ?) stated as the rent.”
And it is found also, that the assignors, prior to the assignment, had sold all of their stock of goods, and the same had been removed, but they were possessed of goods belonging to others which they were selling on commission, and these remained on the demised premises, until after the inventory or schedules were completed and filed.
In the schedule of creditors annexed to the assignment, the plaintiffs are named as creditors on “ Open ac.” in the sum of $1,750, (which is the amount of two quarters’ rent,) but it is not found or proved that it was in part for the quarter in question ; but the schedule states that the “cause or consideration of indebtedness” is “for rent.”
The practical question is whether the collection of the two items of rent is to be regarded as an item of evidence upon the question whether the assignee accepted the lease, or as an estoppel which concludes him.
*162 The Referee has evidently treated it as a question of mere evidence, and held that, on a just view of the whole evidence, the assignee.must be deemed to have elected to reject the lease, and the residue of the term thereby created.
The plaintiffs counsel insists, that the collection of these two items of rent, “ is conclusive evidence of possession and acceptance on the part of the assignee as assignee,” and cites as an authority, Matter of Galloway, (21 Wend., 32.)
In that case, John Galloway (the younger) was proceeded against, as administrator of his deceased father, (John Galloway, senior.) Letters of administration were granted in February, 1833, and the proceedings against the administrator were commenced April 13, 1837. During all the intermediate time, he had “ received the rents, issues and profits of the demised premises.”- Being a non-resident, he was proceeded against as such, to recover $2,632, a sum imposed for assessment, on the demised premises, for opening and continuing the Bedford road, and which sum the lessor had been compelled to pay; the lessee covenanted for himself, his executors, administrators and assigns to pay all taxes, duties and assessments, which should, during the term, be imposed on the demised premises.
The Court held, that an administrator who enters upon leasehold property, which belonged to the intestate at the time of his death, or who receives the rents and profits thereof, is chargeable in the debet and detinet, or directly on the covenant as an assignee, and need not be named as executor or administrator.
The legal estate of a deceased person, must rest somewhere, and is devolved upon his legal representative by operation of law, and he cannot reject the term, so as to avoid liability, so far as he has assets. (2 Williams on Ex’rs, [5th Am. from last Lond. Edit.,] 1558, 1559; 2 Rob. Pr., 99, 100 ; Rubery v. Stevens, 4 Barn. & Ad., 241.)
Where he has no assets, and the land is worth less than the rent, or sum due,, this must be shown by way of defense.. Prima facie,, the land is worth more. *163 Covenant against an executor, is a remedy given by statute. (1 R. S., 747, § 24.)
The Court say, in the matter of Galloway, that receiving" the rents and profits, is the same thing as entering into possession of the premises. But- this is said iu a case where the rents and profits of the whole premises had been received for years, and of an assignee who is compelled to take the term, and is at all events liable to the extent of the rents received, and to the extent of the assets that may come to his hands applicable to the payment of the sum due.
If the position of the present defendant is like that of an executor, it would seem that he would be liable to the extent of the rents received, on the ground that the term is cast upon him, and the rents received, or profits of the land, are appropriated by law to the lessor, and create a personal debt for the sum received, they being less than the sum reserved, for rent.
In Hargrave’s Case, (5 Coke, 31 b.,) it was adjudged that “when an executor takes the profits, nothing shall be assets but the profits above the rent, as if the land be worth £10 per annum and £o is reserved, in that case nothing shall be assets but the £5 above the rent.”
This proposition is discussed and other cases are cited in Rubery v. Stevens, (supra.) See Pugsley v. Aikin, (1 Kern., 494.)
Whether this rule is applicable to such an assignee as the present defendant, is a different question. He may reject the term absolutely, and thus avoid all personal liability. An executor cannot do this. And if the assignee rejects the term, and never enters into possession, but nevertheless, receives the rents of part of the premises for one quarter, it is illogical to say that he can be charged as assignee of the term. If he is to be deemed an assignee of the term, under an assignment not made by operation of law, but by a coutract to which he is a party, he would be liable for the whole rent payable by the lease, however small the sum received by him, and although he may not *164 have received anything. By 2 R. S., 82, § 6, sub. 1, leases for years are declared to be assets, to be applied and distributed, as part of the personal estate of the testator or intestate. 2 R. S., 87, § 27, declares the preferences to be observed in paying debts. And by § 30, Id., power is given to the Surrogate to order rents due or accruing, to be paid in preference to debts of the 4th class, whenever it shall be made to appear to his satisfaction, that such preference will benefit the estate of such testator or intestate. These provisions import that, as between the lessor and the lessee’s executor, the former has no equitable exclusive rights to the rents.
However this may be, yet, in a case where it can properly be said, that such an assignee as this defendant rejected the term and never entered into possession, it cannot be held that he is assignee of the part of the premises for which he received rent, and is chargeable as such. And where, in such a case, the assignee, from some misapprehension of his rights, receives rent from a, sub-ten ant, of only a small part of the premises, which, in equity, may possibly belong to the lessor, he is to be charged, if at all, in an action presenting grounds for equitable relief, and not as assignee of a term, the title to which was never vested in him, and into the possession of which he never entered. (Story Eq., vol. 1, <§ 687.)
If, in such a case, the assignee is liable as assignee of the term, it is because he is, in judgment of law, made assignee of the term, by such reception of rent, against his determination not to take the term, and notwithstanding he was ignorant of the existence of the lease, and never entered into possession of the demised premises.
I am inclined to think that the facts found as to receiving the two items of rent, and the circumstances under which they were received, do not raise the conclusion of law, that the further facts found, viz.: that the defendant, as assignee, did not, at any time, enter into the possession of the demised premises, and did not elect to become assignee of the said lease, are untrue.
*165 It is well settled, that a sub-tenant, who occupies part of the demised premises under a hiring thereof from, the lessee, cannot be charged at the suit of the lessor as assignee pro tanto. The sum which such sub-tenant contracts to pay, the lessor cannot reach upon the facts found, or proved in this case; nor can he maintain any action against the sub-tenant to charge him personally with the payment of that sum.
•Such being the rule in that respect, such an assignee of the lessee as the present defendant, by receiving the sum due from such a sub-tenant, merely collects a debt to which the lessor had no right; and under the circumstances proved in the present case, collects it as a debt due to his assignor, and does not take it a% assignee of the term, and as rents or profits of part of the demised premises.
I am, therefore, of the opinion, that the Beferee, having found upon sufficient evidence that the defendant, as assignee, did not at any time enter into the possession of the demised premises, and did not elect to become assignee of the demised premises, the conclusion that the defendant is entitled to judgment, is correct.
The judgment should be affirmed with costs.
Bobertson, J.
The defendant was clearly not liable as assignee unless he accepted the possession of the premises as such. Collection of the rents and profits as such knowingly, which fell due after the assignment, would be, as laid down in Galloway's Case, (21 Wend., 32,) equivalent to possession.
There is not sufficient evidence in this case to show that the defendant, in procuring the cash for the check of Eyre & Co., knew it was for rent falling due after he became assignee. The schedules annexed to the assignment, informed him that such sum was due, but not on what account. Even if it had been for rent due before he became assignee, his collection of it would not be an acceptance of the lease, as it would be a mere chose in action. (Demarest v. Willard, 8 Cow., 206.) The receipt by *166 him of the check is no evidence of the authority of the agent to give a receipt for it as rent, or of notice to him as principal that it was so. A party bound to make an election is entitled to be apprised of the facts which create a necessity for it. Acts done by mistake and in ignorance of a party’s rights do not constitute an election, unless they could only be done by virtue of one then made or are ratified after discovery of the mistake. If the defendant received the money from the tenants, knowing it to be rent, but having reason to believe and believing it was due before the assignment, he did not thereby elect to accept the assignment of the lease. The judgment given by the Referee was correct, notwithstanding the fact found by him that th» defendant actually collected rent due after he became assignee. There is evidence to show he did not knowingly collect it as such, and we have, therefore, a right to infer that the Referee so found, in fact, although not expressed, in order to sustain his report.
I concur with my brethren in thinking the judgment should be affirmed.
Barbour, J.
In this case the plaintiff seeks to recover from the defendant, as general assignee for the payment of debts, one quarter’s rent of certain premises leased by the plaintiff to the defendant’s assignors, and in their possession at the time of the assignment, upon the alleged ground that the defendant accepted the assignment, epteredinto the possession of the premises, and received rents from some of the under-tenants of the assignor for the quarter in question.
The testimony shows that the lease was not specifically mentioned in the assignment, nor in the schedule subsequently annexed thereto; that the defendant did not take actual possession of, nor occupy, any portion of the premises upon or after the assignment; and that he had no knowledge of the existence of the lease in question. The proofs show, however, that a claim of $50, against H. H. Taylor & Brother, and another against B. J. Eyre & Co. for $87.50, were inserted in the schedule as debts due to *167 the assignors; although it did not appear upon the schedule what the nature of such indebtedness was. But, upon the trial, it appeared that those sums were really for rents of portions of the premises for the then current quarter, which, at the time of the assignment, had not yet accrued; that a man who had formerly acted as a clerk for the assignors, called upon Taylor & Brothers, after their rent became due, and received payment, giving a receipt therefor, in the name of the defendant, expressing that such payment was for rent; and that the check received for such rent came to the defendant’s hands, and was used by him. But there was no evidence tending to prove that the defendant authorized the giving of such receipt, or knew that it had been given, or that he had any knowledge that the check was, in fact, received for rent, beyond what may be inferred from the tact, that when examined as a witness he did not voluntarily deny such knowledge.
The Referee decided, that the defendant was entitled to a judgment in his favor; but, as he has also found as a fact, that the defendant knew the $50 was for the rent of the premises, when he received it, the Referee’s ultimate decision would seem to be in conflict with the general doctrine laid down in Galloway's Case, (21 Wend., 32.) This finding of fact, however, is based, as the Referee very clearly states, wholly upon the failure of the defendant to deny, when examined as a witness in the case, that he knew that the $50 was for the rent of a part of the premises; although he was not examined at all touching that matter.
The finding in question was, certainly, erroneous. There is no evidence in the case tending to prove the defendant knew the money was for rent; and nothing can be inferred to his prejudice from his omission to testify, uninterrogated, as to a collateral matter, not specifically charged in the complaint; more particularly, where, as in this case, the main fact thus sought to be inferentially established, is denied, under oath, in the answer.
The judgment should be affirmed, with costs.